UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

EDWARD H. FLINT                                                                                               Plaintiff,

v.                                                                                        Civil Action No. 3:15-cv-777-DJH

STEVEN GOVERNOR BESHEAR - GOVERNOR OF KENTUCKY           Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon a motion to dismiss (DN 4) filed by Defendant Steven L. Governor Beshear, now former Governor of the Commonwealth of Kentucky (hereinafter "Governor Beshear"). Fully briefed, this matter is ripe for decision. For the following reasons, Defendant's motion to dismiss will be granted.

### I.   SUMMARY OF COMPLAINT

In his Complaint, *pro se* Plaintiff Edward H. Flint makes various allegations regarding Governor Beshear. Several of his allegations relate to Plaintiff's discontent with Metropolitan Life Insurance Company's ("MetLife") decision to raise its premiums in Kentucky.[1] With regard to MetLife, Plaintiff alleges that Governor Beshear allowed MetLife to raise its premiums in Kentucky without official approval, including a 30% premium rate increase in one year. Plaintiff also alleges that Governor Beshear allowed no-bid contracts to be issued in Kentucky. Plaintiff further alleges that Governor Beshear committed fraud, "hid facts regarding his illegal corruption actions," accepted campaign contributions or personal funds in return for favors granted to

---

[1] Plaintiff has sued MetLife twice in this district over MetLife's decisions to raise Plaintiff's premiums. In the first action, Governor Beshear and several other state officials were also named as defendants. *See, e.g.*, *Flint v. MetLife Ins. Co.*, *et. al.,* No. 3:11-CV-54-JGH, 2011 U.S. Dist. LEXIS 45238 (W.D. Ky. Apr. 26, 2011) (case dismissed as meritless), *aff'd sub nom. Flint v. MetLife* , 460 F. App'x 483 (6th Cir. 2011); *see also Flint v. MetLife Ins. Co.*, No. 3:15-CV-00380-CRS (W.D. Ky. Nov. 16, 2015) (case dismissed because Plaintiff's claims were barred by the doctrine of collateral estoppel).

MetLife, and threatened Plaintiff to keep Plaintiff and others from finding out the truth about his illegal acts. Finally, Plaintiff alleges that Governor Beshear bribed members of the Kentucky House of Representatives into not holding impeachment trials against him.

Based on these allegations, Plaintiff claims that Governor Beshear violated 18 U.S.C. § 241; 18 U.S.C. § 242; 42 U.S.C. § 1985; 28 U.S.C. § 1981[2]; and 42 U.S.C. § 1983.

For relief, Plaintiff seeks compensatory and punitive damages. He also asks the Court to report Governor Beshear to the United States Department of Justice for prosecution; bar Governor Beshear from running for any elected office again; bar Governor Beshear from practicing law in Kentucky; take away any and all of Governor Beshear's state retirement benefits; and impose the maximum sentence upon Governor Beshear allowed by law.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. A defendant may move to dismiss a claim or case because the complaint fails to "state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and must accept as true all well-pleaded factual allegations contained within it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative

---

[2] Because 28 U.S.C. § 1981 does not exist, the Court presumes that Plaintiff intended to allege a violation of 42 U.S.C. § 1981 and will construe it as such.

level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id*. at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Although the Court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true, the Court "need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). In other words, a complaint will not survive if it "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks and alterations omitted). Moreover, the Court "need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001); *see also Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006) (stating a district court need not accept "unwarranted factual inferences" as true).

In addition, federal courts hold *pro se* pleadings to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). However, "[o]ur duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). Accordingly, this Court is not required "to explore

exhaustively all potential claims of a pro se plaintiff," as this would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  ANALYSIS

#### A.  MetLife Premium-Rate Increases

Governor Beshear first argues that the claims Plaintiff makes against him with regard to MetLife's rate increases in Kentucky are barred by the doctrine of *res judicata* as set forth in *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 779 (6th Cir. 2000).  Citing *Begala*, Governor Beshear contends that a final decision regarding MetLife's rate increases and his role in such was reached by a court of competent jurisdiction; that he and Plaintiff were parties to that action; that the issues being litigated in this action were actually litigated or should have been litigated in the first action; and that the causes of action have been identified.

The Court agrees that *res judicata* bars Plaintiff's claims related to MetLife's prior rate increases and Governor Beshear.  In *Flint v. MetLife Ins. Co., et. al.*, No. 3:11-CV-54-JGH, the district court considered similar claims and first noted that because Plaintiff had sued state officials, including Governor Beshear, for actions taken in their official capacities, his claims were barred by the Eleventh Amendment of the United States Constitution.  *Id.* at *5 (citing *Grinter v. Knight*, 532 F. 3d 567, 572 (6th Cir. 2008)).  The district court further held that Plaintiff's claims against the named state officials had to be dismissed because state officials "owe no specific fiduciary duty or duty of care to Flint" with regard to the rate increases.  *Id.* at *6.  On appeal, the Sixth Circuit affirmed the district court's Eleventh Amendment holding with regard to monetary relief and concluded that, with regard to injunctive relief, "Flint has failed to

allege specific facts indicating that the defendants violated Kentucky law when they approved MetLife's request for a premium-rate increase." *Flint*, 460 F. App'x at 486.

Similarly, the Court holds that Plaintiff's claim against Governor Beshear concerning MetLife's premium-rate increase in 2015 is barred by the doctrine of collateral estoppel. The doctrine of collateral estoppel "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990). Four requirements must be met before collateral estoppel applies: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009) (citing *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n*, 821 F.2d 328, 330 (6th Cir. 1987)). The doctrine "is designed to protect parties from multiple lawsuits and potentially inconsistent decisions, as well as to conserve judicial resources." *Harvis v. Roadway Express, Inc.*, 973 F.2d 490, 495 (6th Cir. 1992).

As set forth above, the issue of whether Governor Beshear can be held liable for MetLife's premium-rate increases was fully litigated in the prior action in this Court and on appeal before the Sixth Circuit and decided in favor of Governor Beshear. Because Plaintiff seeks to re-litigate an issue that was already decided in his 2011 action, his claim with regard to Governor Beshear and MetLife's rate increases in 2015 must be dismissed for failure to state a claim upon which relief may be granted.

### B. Other Causes of Action

Plaintiff also claims that Governor Beshear has violated 18 U.S.C. § 241; 18 U.S.C. § 242; 42 U.S.C. § 1985; 42 U.S.C. § 1981; and 42 U.S.C. § 1983. Plaintiff's claims under 18 U.S.C. § 241 and 18 U.S.C. § 242 fail because they are criminal statutes that do not create private rights of action. Only federal prosecutors, and not private citizens, have authority to initiate federal criminal charges. *See, e.g., Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986). Plaintiff's claim under 42 U.S.C. § 1985 fails because he has not alleged that a "conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus." *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Similarly, Section 1981 is, "by its very terms, limited to acts of racial discrimination," which Plaintiff has not alleged. *Brady v. Bristol Meyers, Inc.*, 459 F.2d 621, 623 (8th Cir. 1972). Finally, to state a claim under 42 U.S.C. § 1983, "[a] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere. *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Because Plaintiff has not stated a claim under the U.S. Constitution or any federal law, his Section 1983 claim likewise must fail.

In his complaint, Plaintiff also alleges that Governor Beshear has committed fraud upon the "citizens of Kentucky." Significantly, however, Fed. R. Civ. P. 9(b) requires that allegations of fraud must be pled with particularity. To comply with Rule 9(b),

> a plaintiff, at a minimum, must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent

> intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.,* 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks and citations omitted); *see also United States ex rel. Branhan v. Mercy Health Sys. of Southwest Ohio,* 1999 U.S. App. LEXIS 18509, No. 98-3127, 1999 WL 618018, at *1 (6th Cir. Aug. 5, 1999) (affirming dismissal of a complaint because it "failed to allege a single specific incident in which improper billing occurred and the plaintiff never set forth the dates, times, or the names of individuals who engaged in the alleged improper billing").

*United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 643 (6th Cir. 2003).

Similarly, with regard to the other allegations set forth in the complaint, including those related to "no-bid contracts," corruption, bribery, receiving campaign contributions or campaign funds for political favors, conspiracy, and threats, the Court also concludes that these lack the specificity required to survive a motion to dismiss. As the Supreme Court held in *Iqbal*, the Court concludes that Plaintiff's allegations "do not permit the court to infer more than the mere possibility of misconduct because the complaint has alleged - but it has not shown - 'that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679; s*ee also* Fed. R. Civ. P. 8(a)(2). Put another way, Plaintiff's bare-boned allegations have not moved his claims of illegal acts - including "no-bid contracts," corruption, bribery, political favors, conspiracy, and threats - "across the line from conceivable to plausible." *Id*. And, finally, because Plaintiff's assertions are no more than "legal conclusions," they are not entitled to the assumption of truth. *Id*. (citing *Twombly*, 550 U.S. at 555).

### C. Relief Sought

Finally, the Court looks to the relief sought by Plaintiff in his complaint. To the extent that Plaintiff is seeking damages against Governor Beshear in his official capacity, such claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The Court does not have the power to grant the other relief sought by Plaintiff.

Concerning Plaintiff's request for referral of Governor Beshear to the United States Department of Justice for prosecution, Plaintiff does not need the Court to make such a referral for him. Further, the Court does not have the power to direct that criminal charges be filed against anyone. *See Bond v. Thornburgh*, No. 89-6077, 891 F.2d 289, 1989 WL 149981, at *1 (6th Cir. Dec. 12, 1989) ("United States attorneys cannot be ordered to prosecute, because the decision is within their discretion."); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972) (finding that the "plaintiff's complaint fails to state a claim upon which relief can be granted in that none of the United States Attorneys can be compelled to investigate or prosecute alleged criminal activity").

In addition, the Court has no jurisdiction to disbar Governor Beshear. *See Theard v. United States*, 354 U.S. 278, 281(1957) ("The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom. . . lawyers are included."); *In re Baumgartner*, 123 F. App'x 200, 203 (6th Cir. 2005) (recognizing that the state has jurisdiction to disbar an attorney and that the state's power of disbarment cannot be upset by federal review). In any event, disbarment is not an appropriate consideration here.

With regard to Plaintiff's request that the Court bar Governor Beshear from running for any elected office again, the Court notes that the qualifications for candidates for elected offices are set forth in specific federal and state laws, which the Court can only interpret and apply. None are applicable here.

Finally, as to Plaintiff's demand that this Court impose "the maximum sentence" on Governor Beshear, the Court states the obvious: this is a civil action and incarceration of

Governor Beshear is not available as relief to the Plaintiff. As stated previously, the Court does not have the power to direct that criminal charges be filed against anyone.

### D. Previous Sanctions and Prefiling Restrictions

Plaintiff has filed numerous actions in this Court against judges and other public officials. In one of Plaintiff's earlier actions, *Flint v. Whalin*, Civil Action No. 3:11CV-316-JGH, by Memorandum Opinion and Order entered June 21, 2011 (DN 6), the late Senior Judge John G. Heyburn II warned Plaintiff that he would be sanctioned if he filed any additional lawsuits in this Court against federal or state judges on the grounds that he believed they were biased against him or improperly oversaw any of his cases. In another action, *Flint v. McDonald*, Civil Action No. 3:12CV-613-CRS, Senior Judge Charles R. Simpson III, by Memorandum Opinion and Order entered January 18, 2013 (DNs 10 & 11), held that Plaintiff's suit plainly fell within the terms of Judge Heyburn's warning and imposed sanctions upon Plaintiff in the amount of $700. Judge Simpson also warned Plaintiff that additional lawsuits on similar grounds would result in further sanctions and the imposition of filing restrictions.

Since then, the Court has imposed several sanctions upon Plaintiff totaling $3100. Most recently, in *Flint v. Acree,* Civil Action No. 3:15-cv-588-DJH, the undersigned by Memorandum Opinion and Order entered December 18, 2015 (DN 31), ordered that Plaintiff pay the full balance of the sanctions by February 2, 2016, and barred him from filing any new action in this Court until he had paid the sanctions owed. The undersigned also imposed a prefiling restriction upon Plaintiff requiring him to file a motion to seek permission from the Court before filing any new action in this Court.

Because Plaintiff did not sue a judge in the instant action, the Court will not impose additional sanctions under Judge Simpson's sanction order. However, the Court warns Plaintiff

that if he continues to file frivolous lawsuits against public officials, further sanctions will be imposed.

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the motion to dismiss (DN 4) is **GRANTED** pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief may be granted.

The Court will enter a separate Order dismissing the action and restating the sanctions owed by Plaintiff and the prefiling restrictions to be applicable should he pay the full balance of sanctions imposed.

Date: January 12, 2016

**David J. Hale, Judge**
**United States District Court**

cc:   Plaintiff, *pro se*
      Counsel of Record
4415.011

10